**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STANDFORD THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 13 C 6946** |
| | ) | |
| **CORRECTIONAL OFFICER SHACK,** | ) | **Judge Rebecca R. Pallmeyer** |
| **DR. TAYLOR, and COOK COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Stanford Thompson, an inmate at the Cook County Jail ("CCJ"), filed this suit

under 42 U.S.C. § 1983 against Defendant Dr. Brenda Taylor and Cook County.[1]  Plaintiff

alleges that, while he was incarcerated at CCJ, Defendant Taylor acted with deliberate

indifference to his serious dental condition, in violation of the Eighth and Fourteenth

Amendments, by delaying treatment for his chipped tooth.  Plaintiff contends the evidence

shows this delay was a product of a policy or practice at the jail, supporting liability against Cook

County, as well.  Defendants have moved for summary judgment pursuant to FED. R. CIV. P.

56(b), arguing that no reasonably jury could find deliberate indifference on this record.  For the

reasons stated below, the motion [97 is granted.

**I.      Procedural History**

Plaintiff filed his initial complaint, *pro se*, on October 21, 2013, against Defendant Dr.

Taylor and other prison officials.  (Pl.'s Compl. [5] at 4-5; October 21, 2013 Order [4].)  In

addition to his deliberate indifference claim, Plaintiff's original *pro se* complaint raised an

excessive force claim against the other Defendants, as well, but the court dismissed that claim

for failure to exhaust administrative remedies.  Plaintiff's amended complaint, filed by counsel,

---

[1]      Plaintiff's amended complaint asserted a claim against Correctional Officer
Andrew Shack, as well, but Plaintiff has withdrawn that claim, (Pl.'s Mem. in Opposition to Defs.'
Mot. (hereinafter "Pl.'s Mem.") at 1), and the court declines to address it further.

presents the single claim of deliberate indifference to his need for dental care. (Pl.'s Amend. Compl. at 2 [42].)

Defendants filed their motion for summary judgment on June 15, 2015. (Defs.' Mot. for Summary Judgment (hereinafter "Defs.' Mot.") at 1.) In their motion, Defendants note that a claim of deliberate indifference requires both objective evidence of a serious medical condition and subjective evidence of a defendant's deliberately indifferent mental state. (Defs.' Mem. in Support of Mot. for Summary Judgment (hereinafter "Defs.' Mem.") at 1.) Neither of those tests is met here, they urge. With respect to the objective component, Defendants argue that Plaintiff's chipped tooth was not an objectively serious medical condition. (*Id.* at 8.) With respect to the subjective component, Defendants argue that they were not deliberately indifferent to Plaintiff's health, but instead did adequately address Plaintiff's medical needs. (*Id.* at 5-7, 10.) Defendants also argue that Plaintiff's claim against Cook County fails because he has not shown any widespread practice or custom that caused him harm. (*Id.* at 11-13.)

## II.    Facts

Both parties have complied with this court's local rule governing summary judgment submissions. The record is construed in the light most favorable to Plaintiff. Plaintiff Stanford Thompson is currently incarcerated at the Cook County Jail ("CCJ"). (Defs.' Amended Rule 56.1(a)(3) Statement of Facts (hereinafter "Defs.' Amend. SUF") ¶ 1 [98]; Pl.'s Am. Compl. ¶ 2.). Defendant Dr. Brenda Taylor is a dentist employed part-time by Cook County to provide dental services to detainees at CCJ. (Defs.' Amend. SUF ¶ 3; Deposition of Dr. Brenda Taylor at 11, Ex. 12 to Pl.'s Additional Facts (hereinafter "Pl.'s Add. Facts").) Plaintiff claims that on or about August 4, 2013, while incarcerated at CCJ, he suffered a "significant dental injury" when he chipped his tooth while eating potato chips. (Defs.' Amend. SUF ¶¶ 5, 9; Pl.'s Am. Compl. ¶ 10.) As a result of the injury, Plaintiff claims, he suffered serious pain and had difficulty eating and sleeping. (Pl.'s Add. Facts ¶ 3 [109].) After the incident, Plaintiff asked another detainee to notify a correctional officer. (Defs.' Amend. SUF ¶ 11.) When Correctional Officer Andrew

Shack arrived at Plaintiff's cell, Plaintiff told Officer Shack that he had chipped his tooth and that the left side of his mouth hurt, and he showed Officer Shack the piece of tooth that had fallen out.  (*Id.* ¶ 13.)

Officer Shack informed Plaintiff that he needed to contact his supervisor, and Plaintiff refused to return to his cell until he could speak with a "white shirt."[2]  (*Id.* ¶ 18; Deposition of Andrew Shack at 33, Ex. D to Defs.' Amend. SUF.)  Officer Shack complied with this request, calling his supervisor, Sergeant Gwenell McCullough, who arrived at the scene and directed Plaintiff to return to his cell while she contacted the medical dispensary.  (Defs.' Amend. SUF ¶¶ 19-22; Shack Dep. at 34.)  Plaintiff returned to his cell, and Sergeant McCullough called the medical dispensary to report that Plaintiff had chipped his tooth.  (Defs.' Amend. SUF ¶¶ 20-21.)  After speaking with a nurse, Sergeant McCullough told Officer Shack to give Plaintiff a Health Services Request (HSR) form, which is the form that CCJ inmates complete to request non-emergency medical assistance.  (*Id.* ¶¶ 14-15, 22.)  Officer Shack and Plaintiff had no further contact after this incident.  (*Id.* ¶ 25.)

Plaintiff alleges that at a later date in August 2013, he chipped the same tooth again, this time losing a larger piece.  (*Id.* ¶ 26; Pl.'s Add. Facts ¶ 4.)  Although he does not recall many of the details, Plaintiff believes the date of this second injury was August 10, 2013 and that it caused bleeding.  (Pl.'s Add. Facts ¶ 4.)

The record shows that Plaintiff completed two HSR forms for his alleged tooth injuries. The first HSR form was submitted on August 11, 2013 and lists August 11, 2013 as the date of the injury.  (Defs.' Amend. SUF ¶ 27; Affidavit of Linda Kampe and Pl.'s Medical Records at 4, Ex. F to Defs.' Amend. SUF.)  Under "Dental," the HSR form provides a list of the following symptoms, with boxes next to each symptom that an inmate can mark to describe his or her injury: "Toothache," "Face swollen and I can't open my mouth," "Loose tooth from recent

---

[2]     The parties have not explained this term, but the court understands it is a reference to a supervisory jail official.

trauma," and "Other." (Affidavit of Linda Kampe and Pl.'s Medical Records at 4, Ex. F to Defs.' Amend. SUF.) Plaintiff checked the box marked "Other" and wrote: "my tooth chipped while eating now my entire left side hurt I cant [*sic*] eat." (*Id.*) Plaintiff cannot recall whether he filled out this form after his first or second tooth injury.[3] (Pl. Thompson Dep. at 34:7-22, Ex. B to Defs.' Amend. SUF.) According to Defendants, Plaintiff's August 11, 2013 HSR form was processed as "routine," meaning that Plaintiff did not require urgent care. (Defs.' Amend. SUF ¶¶ 28-29; Kampe Aff. and Pl.'s Medical Records at 5, Ex. F to Defs.' Amend SUF.) Plaintiff submitted another HSR form on August 15, 2013. (Defs.' Amend. SUF ¶ 30.) On this second form, Plaintiff marked the box for "loose tooth as a result of trauma" and again listed August 11, 2013 as the date of the injury. (*Id.*) He did not provide any additional information on the form. The parties do not dispute that the information on the HSR form relating to dental issues is important to prison officials in assessing an inmate's medical problem. (*Id.* ¶ 36.)

Inmates are expected to place completed HSR forms in a lock box, one of which is located on every floor, or tier, of the jail. (*Id.* ¶ 16.) The completed HSR forms are then picked up from the lock boxes on a daily basis by medical personnel. (*Id.* ¶ 32.) According to Cermak Health Services' Nonemergency Health Care Requests and Services Policy ("Policy E-07"), "[a] nurse or other qualified care professional will, for each patient submitting an HSR form with a clinical symptom, perform a face-to-face evaluation in the Health Service Dispensary within 24 hours (72 hours on weekends)." (Pl.'s Add. Facts ¶ 9; Policy E-07 at 4, Ex. 3 to Pl.'s Add. Facts.) Plaintiff claims that while the written policy calls for a face-to-face evaluation by a nurse or other qualified health care professional in response to every HSR form complaining of dental

---

[3]     The court notes that there are inconsistencies between dates in the record and Plaintiff's testimony. Plaintiff believes his first injury occurred on August 4, 2013. (Pl.'s Add. Facts ¶ 2.) He believes his second tooth injury occurred on August 10, 2013, yet he does not remember whether his first HSR form, dated August 11, 2013, occurred before or after his second tooth injury. (*Id.* ¶ 4; Pl. Thompson Dep. at 34:7-22.) Though he has not alleged that either of the injuries occurred on August 11, 2013, Plaintiff's completed HSR forms identify that date as the "date of the trauma." (Defs.' Amend. SUF ¶¶ 27, 30; Kampe Aff. and Pl.'s Medical Records at 4-5, Ex. F to Defs.' Amend. SUF.)

pain, this is not the actual practice at CCJ. (Pl.'s Add. Facts ¶¶ 11-13; Deposition of Chidima Onyeachonam at 28:3-9, Ex. 6 to Pl.'s Add. Facts; Testimony of Jesus Estrada at 1271-72, Ex. 5 to Pl.'s Add. Facts.) When asked whether she conducts face-to-face evaluations when processing HSR forms regarding dental pain, Chidima Onyeachonam, a nurse currently employed by Cermak Health Services, testified: "I don't think so. . . . I don't know." (Onyeachonam Dep. at 28:12-16.) When asked whether she is required to do so, she responded: "We don't have to do face to face. Everything goes to the dentist." (*Id.* at 28:3-9.)

In Plaintiff's case, his HSR forms were not reviewed by nurses. (Pl.'s Add. Facts ¶¶ 18-19 (citing Pl.'s Electronic Medical Records at 1-2, Ex. 8 to Pl.'s Add. Facts; Search Results from data.cookcountyil.gov, Exs. 9 & 10; Onyeachonam Dep. at 31:13-15).) Plaintiff's medical records show that his August 11, 2013 HSR form was reviewed by a Correctional Medical Technician on August 12, 2013, and his August 15, 2013 HSR form was reviewed by an Emergency Response Technician on August 16, 2013. (Pl.'s Add. Facts ¶¶ 18-19 (citing Pl.'s Electronic Medical Records at 1-2, Ex. 8 to Pl.'s Add. Facts; Search Results from data.cookcountyil.gov, Exs. 9 & 10).) It is also undisputed that Plaintiff did not receive a face-to-face evaluation within 24 hours of the date of submission of either of the two HSR forms. (Pl.'s Add. Facts ¶¶ 18-22.)

According to Defendants, nurses first "triage" the HSR forms by sorting them into different categories and then bring them to the dental clinic. (Defs.' Amend. SUF ¶ 34; Deposition of Ronald Townsend at 30-31, Ex. G to Pl.'s Add. Facts.) Defendants assert that dental assistants pick up the HSR forms from a designated box in the clinic on a daily basis. (*Id.*) Plaintiff disputes this; he points to his medical records, which show an eight-day delay between when his first HSR form was reviewed by medical personnel and when it was reviewed by dental staff on August 19, 2013. (Pl.'s Resp. to Defs.' Amend. SUF ¶ 34 [109]; Pl.'s Add. Facts ¶ 21 (citing Townsend Dep. at 30; Pl.'s Electronic Medical Records, Ex. 8 to Pl.'s Add. Facts).) Dr. Townsend, the Director of Dental Services at CCJ, testified that the prison dentist

determines the priority level for the inmate's dental problem based on the information contained in the inmate's HSR form. (Defs.' Amend. SUF ¶ 35 (citing Townsend Dep. at 44).) He further testified that he believes all HSR forms should be reviewed by the dentist. (Pl.'s Add. Facts ¶ 26 (citing Townsend Dep. at 40).). The prison does not in fact follow this practice, Plaintiff asserts; in support, he cites Defendant Taylor's testimony that she has never personally seen an HSR form and would not have seen Plaintiff's HSR form. (Pl.'s Resp. to Defs.' Amend. SUF ¶ 35; Pl.'s Add. Facts ¶ 28.) Defendant Taylor, the only dentist for Plaintiff's division of the prison in August 2013, also testified that she does not know anything about how patients are scheduled for dental treatment in her clinic. (Pl.'s Add. Facts ¶ 29.)

On August 23, 2013, Plaintiff went to the medical dispensary for an unrelated injury and was seen by the dispensary physician, Dr. Baker. (Defs.' Amend. SUF ¶ 37 (citing Kampe Aff. and Pl.'s Electronic Medical Records at 6-7, Ex. F to Defs.' Amend. SUF.) Plaintiff complained to Dr. Baker of tooth pain, and Dr. Baker prescribed 600 milligrams of Ibuprofen. (*Id.* ¶ 38; Pl.'s Add. Facts ¶ 5.) According to Plaintiff, Dr. Baker told him that the Ibuprofen would help for the pain, but did not say anything else about Plaintiff's tooth. (Pl.'s Add. Facts ¶ 6.) Defendants contend that the medical records show that Dr. Baker diagnosed Plaintiff with cavities. (*Id.* ¶ 38; Defs.' Resp. to Pl's Add. SUF ¶ 6.) Those records include Dr. Baker's notes from Plaintiff's visit to the dispensary: "The patient presents with s/p graze wound on right arm which is now healed. Today complains of tooth pain 2/2 part of molar cracking off." (Pl.'s Electronic Medical Records at 7, Ex. 8 to Pl.'s Add Facts.) Under "Impression and Plan," Dr. Baker wrote: "1. s/p GSW – HEALED 2. DENTAL CARIES – give Motrin – pt. has f/u at Dental in a few weeks." (*Id.*) While it is undisputed that "caries" is synonymous with "cavities," it is unclear from Plaintiff's medical records whether the cavities, or cavity, noted by Dr. Baker were related to Plaintiff's complaints regarding his chipped tooth.

Although Plaintiff received Ibuprofen at the dispensary, for unknown reasons his prescription for additional Ibuprofen was never filled. (Pl.'s Add. Facts ¶ 7.) August 24, 2013 was the last day he took Ibuprofen. (*Id.*)

On August 27, 2013, Plaintiff submitted a grievance, in which he wrote:

I've been experiencing excruciating pain on the left side of my mouth due to a tooth that broke off while I was eating potato chips [ ]. I've been requesting dental attention and putting in dental request forms since the day it happened. Mastication is nearly impossible for me on the left side of my mouth no matter what I am eating, and the pain continues threw [*sic*] out the day.

(*Id.* ¶ 40; Plaintiff's Grievance filed August 27, 2013, Ex. I to Defs.' Amend. SUF.) That same day, the dental assistant who had reviewed Plaintiff's HSR form requested a dental appointment for him. (Pl.'s Add. Facts ¶ 23.)

On September 5, 2013, Plaintiff was seen by Defendant Dr. Taylor. (Defs.' Amend. SUF ¶ 41.) After performing an oral examination and taking an x-ray, Dr. Taylor determined that Defendant's tooth needed to be extracted. (*Id.* ¶ 42.) She prescribed Plaintiff 600 milligrams of Ibuprofen and 500 milligrams of Amoxicillin, and scheduled him for a priority "urgent" follow-up appointment on September 9, 2015. (*Id.*; Pl.'s Add. Facts ¶ 31.) On September 10, 2013, Dr. Taylor extracted Plaintiff's tooth. (Defs.' Amend. SUF ¶ 45.) After the procedure, Plaintiff received additional pain medication. (*Id.*) Plaintiff needed no follow-up dental care, and he has no permanent injuries as a result of the extraction. (*Id.* ¶¶ 46, 48.)

## DISCUSSION

Summary judgment is proper if the moving party shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing FED. R. CIV. P. 56(a)). A fact is material if it might affect the outcome of the suit under governing law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). In considering a motion for summary judgment, the

court will "construe the facts and draw all reasonable inferences in favor of the non-moving party." *Ferraro v. Hewlett–Packard Co.*, 721 F.3d 842, 847 (7th Cir. 2013). "Once the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll*, 698 F.3d at 564.

## I.       Plaintiff's Failure to Comply with FED. R. CIV. P. 26

Defendant objects to portions of Plaintiff's submission in opposition to this motion on the ground that Plaintiff did not disclose the material as required by Rule 26. As explained in Rule 37(c)(1), where a party fails to make disclosures required by Rules 26(a) or (3), the material at issue may be excluded. The "sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26[ ] was either [substantially] justified or harmless." *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); FED. R. CIV. P. 37(c)(1). In considering whether non-compliance with Rule 26 is harmless, a court should consider: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).

Defendants argue that this court should disregard paragraphs 10, 11, 14-17, and 20 from Plaintiff's LR 56.1 Statement of Additional Facts because they cite evidence that Plaintiff failed to disclose as required by FED. R. CIV. P. 26(a)(1) and 26(e): (1) excerpts from a report written by Dr. Esmail Porsa in May 2014, prepared for another lawsuit, which outlines findings from Dr. Porsa's review of health care access data at CCJ (the "Monitor's Report"); (2) the trial testimony of Jesus ("Manny") Estrada, Chief Operating Officer for Cermak Health Services, dated June 10, 2014, in another lawsuit; and (3) the deposition testimony of Cynthia Kienlen, the Former Director of Nursing at Cermak Health Services, dated June 4, 2015, from yet another lawsuit against the Cook County Sheriff. (Defs.' Resp. to Pl.'s Add. Facts at 2-6.)

According to Defendants, "[n]either the [May 2014] Monitor's Report from *United States v. Cook County*, 10 cv 2946 nor witness Manny Estrada were disclosed in either Plaintiff's initial Rule 26(a)(1) disclosures or any supplements thereafter." (*Id.* at 3.) Defendants also argue that, by filing a supplemental Rule 26(a) disclosure identifying as a witness Nurse Kienlen, months after the close of discovery, Plaintiff failed to comply with Rule 26(e) (*Id.* at 4-5.)

Plaintiff relies on the Monitor's Report, cited in paragraphs 14 through 16 of his Additional Facts, as evidence that there is a policy or practice of inadequate medical care at CCJ.[4] (*See* Pl.'s Add. Facts at 14-17.) As discussed in more detail below, health care policies or practices at CCJ are relevant only if Plaintiff establishes that he himself was the victim of deliberate indifference. The court therefore need not address the facts set forth in paragraphs 14, 15, and 16 of his submission.

The trial testimony of Manny Estrada from *Smentek v. Sheriff*, 09-cv-529, on the other hand, is relevant because Plaintiff uses it as evidence that CCJ prison officials did not adhere to official policy when treating him.[5] (*See* Pl.'s Add. Facts ¶¶ 10-11, 20.) But the court disagrees that Plaintiff failed to properly disclose this testimony. Included in his initial Rule 26(a) disclosures is the "Transcript of Bench Trial in *Smentek v. Sheriff*, 09-cv-529 dated June 2, 2014 through June 10, 2014." (Pl.'s Rule 26(a) Initial Disclosures at 2.) Manny Estrada's testimony is part of this transcript. Although Plaintiff did not specifically identify the testimony of Estrada in his disclosures, identifying the transcript was sufficient to allow Defendants to "focus the

---

[4] Based on the Report, Plaintiff asserts the following facts: "During the time of plaintiff's detention, there were serious delays in access to medical care at the jail. . . . The major factor for delays in access to care at Cook County Jail was the inability to hire nurses . . . . The staffing shortages 'result[ed] in nurses being reassigned from access to care to medication administration duties, resulting in delays in access.'" (Pl.'s Add. Facts ¶¶ 14-17.)

[5] Based on Estrada's testimony, Plaintiff asserts the following facts: "A clinical symptom means the patient has a symptom. For example, 'I have a headache. I have an earache.' Pain is a symptom. . . . Under the Jail's written policy, a face-to-face evaluation by a registered nurse is required in response to every HSR form complaining of dental pain. . . . Only registered nurses are permitted to dispense over-the-counter medications at the jail." (Pl.'s Add. Facts ¶¶ 10-11.)

attention on the 'discovery that is needed, and facilitate preparation for trial . . . .'" *Robinson v. Champaign Unit 4 School Dist.*, 412 Fed Appx. 873, 877 (7th Cir. 2011) (quoting FED. R. CIV. P. 26(a)(1) advisory committee's note (1993)).

The deposition of Nurse Cynthia Kienlen is likewise relevant to Plaintiff's claim that CCJ prison officials failed to follow official policy during their treatment of his dental injury. (*See* Pl.'s Add. Facts ¶ 10; Deposition of Cynthia Kienlen at 99, Ex. 4 to Pl.'s Add. Facts.) It is undisputed that Plaintiff disclosed Nurse Kienlen as a witness for the first time months after the close of discovery.[6] Defendants moved to strike Plaintiff's untimely supplemental disclosure, and the Magistrate Judge granted that motion in a June 12, 2015 order. (June 12, 2015 Order [95].) In her ruling, the Magistrate Judge directed the parties to seek a ruling from this court on the admissibility of Nurse Kienlen's testimony for purposes of summary judgment. (*Id.*) Plaintiff urges this court to set aside the Magistrate Judge's order, arguing that the late disclosure of Nurse Kienlen is justified because Plaintiff did not learn about Nurse Kienlen until Plaintiff's counsel deposed her in a separate lawsuit, *Roland v. Dart*, 14-cv-10161, on June 4, 2015. (Pl.'s Objections to Magistrate's Order [105] ¶¶ 8-9.) Plaintiff asserts, moreover, that there would be no prejudice to including Nurse Kienlen's testimony because the Defendant in *Roland v. Dart* was represented by the same attorney who represents Defendants in this case. (*Id.*) Indeed, defense counsel in this case participated in Nurse Kienlen's June 4, 2015 deposition, albeit as counsel for other defendants.

Defendants nevertheless contend that it would be prejudicial to admit the deposition testimony of Nurse Kienlen because defense counsel did not ask her any questions relating to this case, (Defs.' Resp. to Pl.'s Add. Facts at 6). The court concludes, however, that

---

[6] In a February 5, 2015 order, the Magistrate Judge ruled that, as agreed by the parties, the deadline for completing discovery would be March 9, 2015. (February 5, 2015 Order [55].) On April 15, 2015, this court entered an order mandating that dispositive motions be filed by June 15, 2015. (April 15, 2015 Order [83].) On June 8, 2015, Plaintiff provided Defendants with his FED. R. CIV. P. 26(a)(1) supplemental disclosure of Nurse Kienlen, the Former Director of Nursing at Cermak Health Services, and her deposition transcript from an unrelated case taken on June 6, 2015. (Defs.' Mot. to Strike ¶ [91].)

consideration of Nurse Kienlen's testimony is not prejudicial. That testimony related only to her experience and the general medical care procedures and policies at the jail. (*See generally* Kienlen Dep., Ex. 4 to Pl.'s Add Facts.) Like the Monitor's Report, much of Nurse Kienlen's testimony goes to whether CCJ maintained a policy or practice of deliberate indifference towards inmates' medical needs, an issue that this court addresses only if Plaintiff himself was a victim of deliberate indifference. The only other relevant part of Nurse Kienlen's testimony—that symptoms such as a "headache" and "earache" are considered "clinical symptoms" requiring face-to-face evaluation under official policy—is a minor fact, not seriously contested, that does not alter the outcome of Plaintiff's case.

For the reasons explained above, the court will consider paragraphs 10, 11, 14-17, and 20 of Plaintiff's Additional Facts to the extent they rely on the testimony of Manny Estrada and Nurse Kienlen. Facts that rely on the Monitor's Report will not be considered by this court simply because they are irrelevant to the court's decision.

## II.     Plaintiff's Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. This prohibition includes prison officials' deliberate indifference to prisoners' serious medical needs, which is considered "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976). In order to state an Eighth Amendment claim for deliberate indifference, a prisoner must show, first, that he had an objectively serious medical need. *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001). Second, the prisoner must show that the defendants were deliberately indifferent to it. *Id.* As discussed below, Plaintiff's Eighth Amendment claim fails under the second prong of this test.

### A.     Serious Medical Need

An objectively serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Zentmyer v. Kendall County,* 220 F.3d 805, 810 (7th Cir.

2000) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).  The Seventh Circuit has identified the following indications of a serious medical need: (1) "where failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "the presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain."  *Gutierrez*, 111 F.3d at 1373 (citations and internal quotations omitted).

As Defendants see things, Plaintiff did not suffer a serious medical need because "[t]here is no evidence in the record, aside from Plaintiff's testimony, to suggest that Plaintiff suffered from anything other than cavities[,]" and "[e]ven if he did chip his tooth, that . . . is not a serious condition."  (Defs.' Mem. at 8-9.)  Neither of these statements supports summary judgment on the existence of a serious medical need.  First, to the extent Defendants believe Plaintiff's chipped tooth claim is unsupported, the court disagrees.  There is other evidence in the record, apart from Plaintiff's deposition testimony, of Plaintiff's chipped tooth, namely, the two HSR forms Plaintiff submitted in August 2013.  Moreover, even if there were no other evidence, Plaintiff's testimony itself is sufficient evidence of Plaintiff's injury at the summary judgment stage.  *See Berry v. Chicago Transit Authority*, 610 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried . . . the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment . . . .")

Considering Plaintiff's testimony and other evidence, there is a genuine dispute whether Plaintiff's tooth injury was sufficiently serious to give rise to an Eighth Amendment violation.  According to Plaintiff, the first injury to his tooth, on or about August 4, 2013,[7] did not result in

---

[7]     As noted, the record is inconsistent regarding the dates of Plaintiff's alleged tooth injury.  Plaintiff asserts that he first chipped his tooth "on or about" August 4, 2013, yet on both of his completed HSR forms, Plaintiff marked the "date of trauma" as August 11, 2013.  (Defs.' Amend. SUF ¶ 27, 30; Kampe Aff. and Pl.'s Medical Records at 4-5, Ex. F to Defs.' Amend. SUF.)

bleeding.  (Defs.' Amend. SUF ¶¶ 9-10; Pl. Thompson Dep. at 23-25.)  When Plaintiff chipped a larger part of his tooth on a later date, however, he began bleeding, suffered serious pain, and had difficulty eating and sleeping as a result of his injury.  In his August 27, 2013 grievance, Plaintiff wrote that he was experiencing "excruciating pain" and that "[m]astication [was] nearly impossible for [him] on the left side of [his] mouth[.]"  (Plaintiff's Grievance filed August 27, 2013, Ex. I to Defs.' Amend. SUF.)  As of August 27, 2013, therefore, it appears that Plaintiff's injury involved "substantial pain" that "significantly affect[ed] . . . [his] daily activities." *Gutierrez*, 111 F.3d at 1373.  A chipped tooth may not always cause significant pain, but Plaintiff's injury may have been more serious if his chipped tooth had in fact decayed, resulting in cavities.  (*Id.* ¶ 38; Defs.' Resp. to Pl's Add. Facts ¶ 6.)  By the time Plaintiff was seen by Defendant Taylor in early September 2013, his tooth was so damaged that it required extraction.  It is not difficult to imagine "further significant injury" that an individual, like Plaintiff, could suffer from having a potentially decayed tooth exposed: inflammation or swelling in his gums, infection, or an abscess.[8]  *Gutierrez*, 111 F.3d at 1373.  Due to these and other risks of neglected dental conditions, the Seventh Circuit has noted that "[d]ental care is one of the most important medical needs of inmates." *Wynn,* 251 F.3d at 593 (quoting *Ramos v. Lamm,* 639 F.2d 559, 576 (10th Cir. 1980)).

To support their argument that Plaintiff's allegation of a chipped tooth nevertheless does not amount to a serious medical condition, Defendants rely on the Seventh Circuit's decision in *Martin v. Tyson*, 845 F.2d 1451, 1457-58 (7th Cir. 1988), but that case is distinguishable.  In *Martin*, the plaintiff claimed that prison officials violated the Eighth Amendment when they failed to provide him with dental treatment for his chipped tooth.  *Id.* at 1457.  The court concluded that the plaintiff's chipped tooth was not a serious medical condition largely because the plaintiff had not mentioned his tooth or complained of any pain when he was seen by a doctor for an

---

[8]     Again, it is unclear whether the cavity, or cavities, diagnosed by Dr. Baker were related to Plaintiff's chipped tooth; at the summary judgment stage, however, the court views these facts in the light most favorable to the non-moving party.  *Ferraro*, 721 F.3d at 847.

unrelated medical condition. *Id.* at 1457-58. In contrast, Plaintiff Thompson complained about his tooth on four separate occasions in August 2013 before he was treated by a dentist.

The other case cited by Defendants, *Harrison v. Blakely*, 219 F.3d 132, 137 (2d Cir. 2000), actually supports Plaintiff's position on this issue. In *Harrison*, the Second Circuit noted that "a tooth cavity is not ordinarily deemed a serious medical condition . . . because [it] is readily treatable. Unless the cavity is treated, however, the tooth will degenerate, probably cause severe pain, and eventually require extraction and perhaps further extraordinary invasive treatment." *Id.* at 136. In other words, while not every chipped tooth or cavity is a "serious medical need," it can be in cases, such as this one, where Plaintiff claims that he had difficulty eating and sleeping and suffered "excruciating pain," and where his tooth ultimately had to be extracted. Defendants' assertions that Plaintiff did not suffer significant pain or chip his tooth are disputed, and do not support summary judgment.

The conclusion that Plaintiff may have suffered a serious medical condition by the time he received treatment in September 2013, however, is only the first prong of the deliberate indifference test. The record must also show that Defendants were deliberately indifferent to it.

### B. Deliberate Indifference

Although Plaintiff may have suffered a serious medical need, his Eighth Amendment claim cannot survive summary judgment because the evidence fails to show that Defendant Taylor, Cook County, or any individual, acted with deliberate indifference towards Plaintiff's injury. In fact, the undisputed facts show that Plaintiff received adequate treatment, considering the nature of his condition as stated in his own HSR forms and other complaints.

### 1. Defendant Taylor

Plaintiff argues that Defendant Taylor was deliberately indifferent to his medical need because she "should have reviewed the Health Service Request forms that plaintiff submitted," but "[s]he failed to do so." (Pl.'s Mem. at 7.) Plaintiff also argues that Defendant Taylor acted

with deliberate indifference when she failed to provide him with dental treatment in a timely manner. (*Id.*) Neither one of Plaintiff's arguments is supported by the facts.

Plaintiff's contention that Defendant Taylor should have reviewed his HSR forms is presumably based on the deposition of Dr. Townsend, the Director of Dental Services at CCJ, who testified that all HSR forms should be reviewed by a dentist. (Pl.'s Add. Facts ¶ 26 (citing Townsend Dep. at 40:18-24.) However wise such a policy may be, the argument that Defendant Taylor did not adhere to it is essentially one of negligence for failing to follow protocol. Mere negligence, however, "is not actionable under the Eighth Amendment." *Sellers v.* Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). Rather, "[n]eglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official . . . 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994)). In other words, deliberate indifference "indicates a culpable state of mind, something akin to criminal recklessness[.]" *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Plaintiff has provided no evidence that Defendant Taylor's failure to review his HSR forms created an excessive risk to his health, much less that Defendant Taylor *knew* that her failure to review Plaintiff's HSR forms would create such a risk. If Defendant Taylor had reviewed Plaintiff's HSR forms, she would have seen from the August 11, 2013 form that Plaintiff's "tooth chipped" and that "the left side of [his] mouth hurt[]," making it difficult for him to eat. (Defs.' Amend. SUF ¶ 27.) From his August 15, 2013 HSR form, she would have seen that Plaintiff had a loose tooth as a result of trauma, but that he was no longer complaining of pain. (*Id.* ¶ 30.) Plaintiff's statements on his HSR forms alone would not have been sufficient to have put Defendant Taylor on notice of "an excessive risk to [Plaintiff's] health" requiring treatment in a matter of days, not weeks. *Sellers*, 41 F.3d at 1102.

Plaintiff believes that Defendant Taylor acted with deliberate indifference by failing to provide him with timely dental treatment, but nothing in the record supports this contention. Defendant Taylor became aware of Plaintiff's medical need, at the earliest, on August 27, 2013,

when the dental assistant who reviewed Plaintiff's HSR form requested a dental appointment for him. (Pl.'s Add. SUF ¶ 23.) Once Plaintiff's dental appointment was scheduled by the dental assistant, he was seen by Defendant Taylor eight days later, on September 5, 2013. Considering the information available to Dr. Taylor, the one week delay does not constitute a "significant delay . . . where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). It appears Plaintiff suffered from a cavity, or cavities, as well, but there is no evidence that Defendant Taylor was aware of Dr. Baker's observations. In fact, Dr. Taylor testified at her deposition that she had never before seen the medical record of Plaintiff's visit with Dr. Baker on August 23, 2013. (Taylor Dep. at 111.) Defendant Taylor also acted reasonably once she saw Plaintiff and became aware of the extent of his injury; she performed a dental examination on September 5, 2013, and then scheduled Plaintiff for a prompt follow-up appointment on September 10, 2013, at which time she extracted Plaintiff's tooth. She also provided Plaintiff with medication to relieve his pain both in the interim between his two dental appointments, as well as after his tooth was extracted.

In sum, nothing in the record shows that Defendant Taylor knew about Plaintiff's medical need until he was scheduled for a dental appointment, at which point Defendant Taylor provided Plaintiff with treatment within a reasonable time. These are not actions demonstrating recklessness or deliberate indifference.

### 2. Defendant Cook County

Plaintiff claims that Defendant Cook County also caused his Eighth Amendment rights to be violated because of its policy of deliberate indifference towards treating serious dental pain at the jail. (Pl.'s Am. Compl. ¶ 8.) Due to staffing shortages in 2013 around the time of Plaintiff's injury, nursing staff at CCJ were unable to process HSR forms in a timely manner, Plaintiff contends. (Pl.'s Mem. at 9.) Plaintiff further contends that, despite the official policy requiring face-to-face assessments for inmates with clinical symptoms, in actual practice prisoners at

CCJ receive no face-to-face assessments for dental pain. (*Id.* at 9-10.) The official policy also requires review of HSR forms by a "nurse or other qualified health care professional," while Plaintiff complains that his forms were processed by lower-level practitioners. (*Id.* at 10.) Finally, Plaintiff claims that, at the time of his injury, the "scheduling process for dental appointments was inefficient," resulting in dental appointments not being scheduled properly. (*Id.* at 11.)

Under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36 (1978), local governments can be held liable under § 1983 only if a plaintiff's constitutional rights were violated as a result of an official policy, custom, or widespread practice. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 122, 112 S. Ct. 1061, 1067 (1992); *Petty v. City of Chicago,* 754 F.3d 416, 424 (7th Cir. 2014). The court need not address Plaintiff's *Monell* claim, however, because Plaintiff has failed to show that anyone at the prison was deliberately indifferent to his dental pain. In other words, there is no evidence in the record that Plaintiff's Eighth Amendment rights were violated.

Based on the information provided by Plaintiff to prison officials, Plaintiff was treated for his potentially serious medical condition in a satisfactory manner. Could the prison officials have done things differently? Yes. Could they have treated Plaintiff earlier? Yes. Would Plaintiff have benefited from earlier treatment? Yes. But these are not the questions that must be asked when determining whether prison officials violated the Constitution. The Constitution does not mandate perfect medical care for inmates; it merely requires *adequate* medical care. *Brown v. Plata*, 563 U.S. 493, 131 S. Ct 1910, 1928 (2011).

The undisputed facts show that Plaintiff received adequate medical care by CCJ prison officials. Though Plaintiff believes he was not timely evaluated by a dentist or provided with medication to alleviate his pain (Pl.'s Am. Compl. ¶ 1), the evidence shows that he received effective treatment just one month after he first complained of his injury. Plaintiff also alleges that his HSR forms were not reviewed and processed in a timely manner. (*Id.* ¶ 14.) In fact,

however, Plaintiff's HSR forms were reviewed by medical professionals *within 24 hours*—his first HSR form was reviewed by a Correctional Medical Technician and his second HSR form was reviewed by an Emergency Response Technician. Once his HSR forms were transferred to the dental clinic, they were reviewed by a dental staff member. This review took place on August 19, 2013, eight days after Plaintiff had submitted his first HSR form. After another eight days, on August 27, 2013, Plaintiff was scheduled for a dental appointment, and he was seen by the dentist, Defendant Taylor, approximately one week thereafter. In the meantime, on August 23, 2013, Plaintiff was seen by a doctor in the medical dispensary who provided him with Ibuprofen to relieve his pain, as well as a prescription for additional Ibuprofen while he waited to see the dentist. Unfortunately, Plaintiff's prescription for Ibuprofen was never filled. But Plaintiff has not suggested this was deliberate, and there is no evidence that he ever followed up with prison officials to determine what happened to the prescription.

The court notes, further, that for the majority of time that Plaintiff went without treatment, medical professionals at the prison had limited knowledge about the extent of his injury. Based on Plaintiff's first HSR form, they would have been aware that Plaintiff had chipped his tooth, and as a result, the left side of his mouth hurt and he could not eat. Based on Plaintiff's second HSR form, they would have been aware that Plaintiff suffered from a "loose tooth," but not that he was continuing to experience pain. Prison officials became aware of the extent of Plaintiff's injury at the earliest either on August 23, 2013, when Plaintiff was seen by the medical dispensary doctor for an unrelated injury, or on August 27, 2013, when Plaintiff filed his grievance complaining of continuous "excruciating pain."[9]

---

[9] It is true that, as Plaintiff contends, official policy requires Cermak medical professionals to conduct face-to-face evaluations of inmates complaining of clinical symptoms within 24 hours, and no face-to-face assessment was ever done for Plaintiff. Prison officials, therefore, could have known the extent of Plaintiff's injury earlier if they had conducted an in-person evaluation. While the Cermak Health Services policy is a good one, a violation of an official policy does not necessarily mean there has been a violation of the Constitution; here, the alleged violation did not ultimately deprive Plaintiff of adequate medical care. Rather, as noted

A handful of other cases address Eighth Amendment claims brought by prisoners with dental injuries.  Those cases support this court's conclusion that Defendants here are not guilty of deliberate indifference.  In *Manny v. Monroe*, the court denied defendants' motion for summary judgment where plaintiff complained to prison officials of mouth pain, headaches, earaches, sleep loss, and an inability to eat as a result of a dental condition.  151 F. Supp. 2d 976, 990 (N.D. Ill. 2001).  Despite his complaints, when the plaintiff was seen by a dentist on two different occasions more than three months apart, he only received Motrin and Tylenol for his pain.  *Id.* at 993.  Ultimately, the plaintiff did not receive treatment until ten months after his symptoms began, at which point four of his teeth were extracted.  *Id.*  Plaintiff Thompson's condition was not as extreme as the plaintiff in *Manny*, yet he was scheduled for a dental visit and received treatment (tooth extraction) within a few weeks after his first symptoms.  And when he complained of pain to both the medical dispensary doctor and the prison dentist, Defendant Taylor, Plaintiff immediately received pain medication.

In *Board v. Farnham*, the Seventh Circuit upheld the denial of summary judgment on interlocutory appeal where plaintiff claimed that he had suffered from dental pain throughout his incarceration and that his teeth, which should have been surgically removed, were merely broken off below the gum line by a prison dentist.  394 F.3d 469, 480 (7th Cir. 2005).  Despite plaintiff's dental pain and his requests for toothpaste on fifteen different occasions, prison officials refused even to give him toothpaste for more than three weeks.  *Id.* at 481.  And in a Ninth Circuit case, *Hunt v. Dental Dep't*, the court reversed in part an order granting summary judgment for defendants where plaintiff had lost his dentures and had claimed that "prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly," yet failed to provide him with any relief or treatment for three months.  865 F.2d 198, 200 (9th Cir. 1989).

---

earlier, any claim that, had the policy been followed, Plaintiff would not have suffered, rests on a negligence theory.

The facts of this case are quite different. The prison officials in *Manny*, *Farnham*, and *Hunt* were aware of the severity of the plaintiff's dental pain, yet refused to provide any treatment or relief. Here, the undisputed facts show that prison officials were not fully aware of the extent of Plaintiff's injuries until late August, around the time when Plaintiff filed his grievance complaining of "excruciating pain" that made chewing on the left side of his mouth impossible. Plaintiff was seen by the dentist approximately one week later, and his tooth was extracted just two weeks after that. This is much shorter than the three-and-a-half week to ten month delays mentioned in *Manny*, *Farnham*, and *Hunt*, where plaintiffs suffered from more serious dental conditions. Also, unlike the inmates in the other cases, there is no evidence that CCJ prison officials refused to provide Plaintiff with relief. Indeed, it is undisputed that when Plaintiff first complained of his chipped tooth, Officer Shack provided Plaintiff with an HSR form, which was reviewed by medical professionals at the prison. Then, when Plaintiff complained of mouth pain to the medical dispensary doctor, he was provided with medication to relieve his pain. Finally, when Plaintiff complained of pain to the dentist, Defendant Taylor, she provided him with pain medication and extracted his tooth.

In sum, the evidence does not support Plaintiff's contention that he received inadequate or delayed treatment for his chipped tooth or that prison officials were otherwise deliberately indifferent towards his condition in violation of his constitutional rights. Because there is no underlying constitutional violation, Plaintiff has no claim against Cook County under § 1983.

## <u>CONCLUSION</u>

Plaintiff has failed to establish that Defendants acted with deliberate indifference towards his dental condition, in violation of the Eighth and Fourteenth Amendments. Defendants' motion for summary judgment [96] is therefore granted.

ENTER:

January 14, 2016

_____
REBECCA R. PALLMEYER
United States District Judge