# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANDFORD THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 6946 |
| ) | |
| DR. BRENDA TAYLOR and ) | Judge Rebecca R. Pallmeyer |
| COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Cook County jail inmate, brought this action alleging that Defendants Dr. Brenda Taylor and Cook County were deliberately indifferent to his serious dental condition—a chipped tooth that was eventually extracted—and that their delay in providing treatment was a product of Cook County Jail ("CCJ") policy. The court granted Defendants' motion for summary judgment on January 14, 2016. Plaintiff now moves for reconsideration pursuant to Rule 59(e), arguing that the court's decision is inconsistent with *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015), and that it overlooked the holding of *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). For the following reasons, the motion is granted.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his initial complaint, *pro se*, on October 21, 2013, against Dr. Taylor, Cook County, and other prison officials for deliberate indifference with regard to a serious dental injury. Proof of such a claim requires both objective evidence of a serious medical condition and subjective evidence of a defendant's deliberately indifferent mental state. Defendants filed their motion for summary judgment on June 15, 2015, arguing that Plaintiff's chipped tooth was not an objectively serious medical condition, and that there was no evidence that Defendants were deliberately indifferent to Plaintiff's health. (Defs.' Mem. [99] at 7-10.) Defendants also argued that Plaintiff's claim against Cook County failed because he did not show any

widespread practice or custom that caused him harm, as required under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). (Defs.' Mem. [99] at 11-14.)

The court granted summary judgment in favor of Defendants. (Jan. 14, 2016 Order [120].) The court recognized that there was a genuine dispute as to whether Plaintiff's tooth injury was a serious condition, but determined that Plaintiff had received adequate treatment, and therefore there was no Eighth Amendment violation. As the court reviewed the record, it appeared that Defendant Taylor, the prison dentist, first learned about Plaintiff's medical need when he was scheduled for a dental appointment, at which point Taylor provided Plaintiff treatment within a reasonable time. The court did not reach *Monell* because it appeared that no one in the prison was deliberately indifferent to his dental pain, and Plaintiff was treated in a satisfactory manner.

The court assumes the reader's familiarity with the court's earlier opinion but presents a brief review of relevant facts. Plaintiff claims that on or about August 4, 2013, while incarcerated at CCJ, he suffered a "significant dental injury" when he chipped his tooth while eating potato chips. (Defs.' Am. SUF ¶¶ 5, 9; Pl.'s Am. Compl. ¶ 10.) As a result of the injury, Plaintiff claims, he suffered serious pain and had difficulty eating and sleeping. (Pl.'s Add'l Facts ¶ 3 [109].)

On the same day he was injured, Plaintiff reported the incident to correctional Officer Andrew Shack.[1] Plaintiff told Officer Shack that he chipped his tooth and that the left side of his mouth hurt, and he showed Officer Shack the piece of the tooth that had fallen out. (Defs.' Am. SUF ¶¶ 12-13.) Officer Shack placed a call for a sergeant, and Sergeant Gwenell McCullough responded. (Defs.' Am. SUF¶¶ 19-20.) After speaking with a nurse located in the dispensary, Sergeant McCullough told Officer Shack to give Plaintiff a Health Services Request ("HSR") form, the form that CCJ inmates complete to request non-emergency medical assistance.

---

[1] Plaintiff withdrew his claim asserted against Correctional Officer Andrew Shack. (Pl.'s Mem. [110] at 1.)

(Defs.' Am. SUF ¶¶ 21-22.)

Plaintiff alleges that at a later date in August 2013, he chipped the same tooth again, this time losing a larger piece. (*Id.* ¶ 26; Pl.'s Add'l Facts ¶ 4.) The record shows that, in total, Plaintiff completed two HSR forms for his alleged tooth injuries. The first HSR form was submitted on August 11, 2013 and it lists August 11, 2013 as the date of the injury. (Defs.' Am. SUF ¶ 27; Kampe Aff. & Pl.'s Med. Recs. at 4, Ex. F to Defs.' Am. SUF.) On that August 11 HSR, Plaintiff wrote: "my tooth chipped while eating now my entire left side hurt I cant [*sic*] eat." (*Id.*) According to Defendants, Plaintiff's August 11, 2013 HSR form was processed as "routine," meaning that Plaintiff did not require urgent care. (Defs.' Am. SUF ¶¶ 28-29; Kampe Aff. & Pl.'s Med. Recs. at 5, Ex. F to Defs.' Am. SUF.) Plaintiff submitted another HSR form on August 15, 2013. (Defs.' Am. SUF ¶ 30.) On this second form, Plaintiff marked the box for "loose tooth as a result of trauma" and again listed August 11, 2013 as the date of the injury. (*Id.*) He did not provide any additional information on the form. There was no face-to-face evaluation conducted in relation to Plaintiff's submitted HSR forms.

Inmates are expected to place completed HSR forms in a lock box, one of which is located on every floor, or tier, of the jail. (*Id.* ¶ 16.) The completed HSR forms are then picked up from the lock boxes on a daily basis by medical personnel. (*Id.* ¶ 32.) According to Cermak Health Services' Nonemergency Health Care Requests and Services Policy ("Policy E-07"), "[a] nurse or other qualified care professional will, for each patient submitting an HSR form with a clinical symptom, perform a face-to-face evaluation in the Health Service Dispensary within 24 hours (72 hours on weekends)." (Pl.'s Add'l Facts ¶ 9; Policy E-07 at 4, Ex. 3 to Pl.'s Add'l Facts.)

CCJ policy thus appears to call for a face-to-face evaluation by a nurse or other qualified health care professional in response to any HSR form complaining of dental pain. Plaintiff contends, however, that this is not the actual practice at CCJ. (Pl.'s Add'l Facts ¶¶ 11-13; Onyeachonam Dep. at 28:3-9, Ex. 6 to Pl.'s Add'l Facts; Testimony of Jesus Estrada at 1271-

3

72, Ex. 5 to Pl.'s Add'l Facts.) He offered evidence that supports the contention: when asked whether she conducts face-to-face evaluations in response to HSR forms regarding dental pain, Chidima Onyeachonam, a nurse currently employed by Cermak Health Services, testified: "I don't think so. . . . I don't know." (Onyeachonam Dep. at 28:12-16.) When asked whether she is required to do so, she responded: "We don't have to do face to face. Everything goes to the dentist." (*Id.* at 28:3-9.)

Defendants assert that dental assistants pick up the HSR forms from a designated box in the clinic on a daily basis. (*Id.*) Plaintiff disputes this; he points to his own medical records, which show an eight-day delay between when his first HSR form was reviewed by medical personnel and when it was reviewed by dental staff on August 19, 2013. (Pl.'s Resp. to Defs.' Am. SUF ¶ 34 [109]; Pl.'s Add'l Facts ¶ 21 (citing Townsend Dep. at 30; Pl.'s Electronic Medical Records, Ex. 8 to Pl.'s Add'l Facts).) Dr. Ronald Townsend, the Director of Dental Services at CCJ, testified that the prison dentist determines the priority level for the inmate's dental problem based on the information in the inmate's HSR form. (Defs.' Am. SUF ¶ 35 (citing Townsend Dep. at 44).) He further testified that he believes all HSR forms should be reviewed by the dentist. (Pl.'s Add'l Facts ¶ 26 (citing Townsend Dep. at 40).). The prison does not adhere to this practice, either, Plaintiff asserts; in support, he cites Defendant Taylor's testimony that she has never personally seen an HSR form and would not have seen Plaintiff's HSR form. (Pl.'s Resp. to Defs.' Am. SUF ¶ 35; Pl.'s Add'l Facts ¶ 28.) Defendant Taylor, the only dentist for Plaintiff's division of the prison in August 2013, also testified that she does not know anything about how patients are scheduled for dental treatment in her clinic. (Pl.'s Add'l Facts ¶ 29.)

On August 23, 2013, Plaintiff went to the medical dispensary for an unrelated injury and was seen by the dispensary physician, Dr. Terrance Baker. (Defs.' Am. SUF ¶ 37 (citing Kampe Aff. and Pl.'s Electronic Medical Records at 6-7, Ex. F to Defs.' Am. SUF.) Plaintiff complained to Dr. Baker of tooth pain, and Dr. Baker prescribed 600 milligrams of Ibuprofen. (*Id.* ¶ 38; Pl.'s Add'l Facts ¶ 5.) According to Plaintiff, Dr. Baker told him that the Ibuprofen would help for the

4

pain, but did not say anything else about Plaintiff's tooth. (Pl.'s Add'l Facts ¶ 6.)

On August 27, 2013, Plaintiff submitted a grievance, in which he wrote:

> I've been experiencing excruciating pain on the left side of my mouth due to a tooth that broke off while I was eating potato chips [ ]. I've been requesting dental attention and putting in dental request forms since the day it happened. Mastication is nearly impossible for me on the left side of my mouth no matter what I am eating, and the pain continues threw [sic] out the day.

(*Id.* ¶ 40; Pl.'s Aug. 27, 2013 Grievance, Ex. I to Defs.' Am. SUF.) That same day, the dental assistant who had reviewed Plaintiff's HSR form requested a dental appointment for him. (Pl.'s Add'l Facts ¶ 23.) On September 5, 2013, Plaintiff was seen by Defendant Dr. Taylor. (Defs.' Am. SUF ¶ 41.) After performing an oral examination and taking an X-ray, Dr. Taylor determined that Defendant's tooth needed to be extracted. (*Id.* ¶ 42.) She prescribed Plaintiff 600 milligrams of Ibuprofen and 500 milligrams of Amoxicillin, and scheduled him for a priority "urgent" follow-up appointment on September 9, 2013. (*Id.*; Pl.'s Add'l Facts ¶ 31.) On September 10, 2013, Dr. Taylor extracted Plaintiff's tooth. (Defs.' Am. SUF ¶ 45.) After the procedure, Plaintiff received additional pain medication. (*Id.*) Plaintiff needed no follow-up dental care, and he has no permanent injuries as a result of the extraction. (*Id.* ¶¶ 46, 48.)

In response to Defendants' motion for summary judgment, Plaintiff submitted: (1) excerpts from a report written by Dr. Esmail Porsa in May 2014, prepared for another lawsuit, which outlines findings from Dr. Porsa's review of health care access data at CCJ (the "Monitor's Report"); (2) the trial testimony of Jesus ("Manny") Estrada, Chief Operating Officer for Cermak Health Services, dated June 10, 2014, in another lawsuit; and (3) the deposition testimony of Cynthia Kienlen, the Former Director of Nursing at Cermak Health Services, dated June 4, 2015, from yet another lawsuit against the Cook County Sheriff. (Defs.' Resp. to Pl.'s Add'l Facts at 2-6.) Defendants object to the court's consideration of this material on the ground that neither the Monitor's Report nor witness Manny Estrada were disclosed in "either Plaintiff's initial Rule 26(a)(1) disclosures or any supplements thereafter." (*Id.* at 3.) Defendants also argue that, by filing a supplemental Rule 26(a) disclosure identifying as a witness Nurse

Kienlen, months after the close of discovery, Plaintiff failed to comply with Rule 26(e), which imposes a duty to timely supplement expert disclosures. (*Id.* at 4-5.)

Plaintiff relies on the Monitor's Report as evidence that there "were serious delays in access to medical care at the jail. . . . The major factor for delays in access to care at Cook County Jail was the inability to hire nurses . . . . The staffing shortages 'result[ed] in nurses being reassigned from access to care to medication administration duties, resulting in delays in access.'" (Pl.'s Add'l Facts ¶¶ 14-17.) In this court's earlier ruling, it did not address the admissibility of the Monitor's Report because it did not reach Plaintiff's *Monell* claim, and therefore evidence of policy or practice of inadequate medical care was not relevant to the prior decision. The court ruled that Plaintiff had adequately disclosed the testimony of Manny Estrada by including the "transcript of Bench Trial in *Smentek v. Sheriff*, 09-cxv-529 dated June 2, 2014 through June 10, 2014," and although Plaintiff did not specifically cite Estrada's testimony, submission of the transcript was sufficient to put Defendants on notice. (Jan. 14, 2016 Order at 9-10.) Finally, the court considered the deposition testimony of Nurse Kienlen. Estrada's testimony, and Nurse Kleinen's testimony, both supported Plaintiff's claim that prison officials failed to follow official policy during their treatment of his dental injury. The court concluded that Defendants were not prejudiced by consideration of Nurse Kienlen's June 4, 2015 deposition testimony because defense counsel in this case participated in that deposition, albeit as counsel for other defendants.

**DISCUSSION**

Any substantive motion that challenges the merits of a district court's decision and is served within ten days after the entry of a judgment is considered under Rule 59(e). FED. R. CIV. P. 59(e). Such a motion should be granted "if there exists 'a manifest error of law or fact,' so as to enable 'the court to correct its own errors and thus avoid unnecessary appellate procedures.'" *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir.1999). Plaintiff contends the test is met here, in light of the Seventh Circuit's rulings in *Dobbey v. Mitchell-Lawshea*, 806 F.3d

6

938, 940 (7th Cir. 2015) and *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). (Pl.'s Mot. to Reconsider at 2-4, 4-6.) Defendants object to this motion on procedural and substantive grounds, discussed below.

A.      **Merits of Rule 59(e) Motion**

A Rule 59(e) serves the limited function of allowing the court to correct manifest errors of law or fact or to consider newly discovered evidence. Defendants argue that the motion must be denied because it relies on evidence available earlier but not submitted during summary judgment. (Defs.' Resp. to Pl.'s Mot. to Amend, at 3.) They cite several cases in support. First, in *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.* 90 F.3d 1264 (7th Cir. 1996), where the parties disputed the deadline for exercise of a stock swap option, the court granted summary judgment for plaintiff and denied defendant's motion for reconsideration. On appeal, defense counsel "candidly confess[ed]" that the "new evidence," presented in the Rule 59(e) motion, consisting of prior agreements and correspondence between the parties, "could have been adduced earlier." *Id.* at 1270. The Seventh Circuit affirmed denial of the motion for reconsideration under these circumstances. Similarly, in *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008), a prison condition case, the district court granted summary judgment to defendant on the basis that plaintiff failed to exhaust administrative remedies. On appeal from the denial of a motion for reconsideration, the Seventh Circuit pointed out that plaintiff's error in labeling his motion as a Rule 60(b) motion was not fatal, it was nevertheless properly denied. Plaintiff offered no explanation why the evidence in support of his motion—administrative filings and an affidavit—had not been presented to the district court prior to entry of summary judgment. *Id.*

The plaintiff in yet another case made a similar error. In *County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 819 (7th Cir. 2006), plaintiff county sought a declaration that it was not required to arbitrate an insurance dispute. After the court granted the insurer's motion to dismiss, the county sought reconsideration, urging that the insurer had waived its right to

arbitrate. The Seventh Circuit concluded that the district court did not err in denying reconsideration; the waiver argument was available, but not advanced, in response to the motion to dismiss. *See also Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (affirming district court's refusal to reconsider summary judgment in an insurance dispute, where the moving party presented the testimony of a new witness without explaining why he could not have located the witness earlier, and "merely took umbrage with the court's ruling and rehashed old legal arguments").

The Rule 59(e) motion before this court differs from those in the cases cited by Defendant. Plaintiff has not attempted to introduce theories or evidence available prior to the court's judgment, nor does he simply rehash old arguments. Instead, he cites controlling case law, including a decision rendered on November 24, 2015, after summary judgment had been fully briefed in this case. (Pl.'s Mot. to Reconsider at 3.) In *Dobbey*, the Seventh Circuit held that the district court committed manifest error in granting summary judgment to prison officials when they did not promptly treat the plaintiff's tooth abscess. *Id.* at 939-40. The Rule 59(e) motion, therefore, is properly before the court in that it enables the "district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986).

*Thomas v. Cook County*, on the other hand, was decided in 2010, and Plaintiff did not cite to that case in his memorandum in opposition to Defendants' Motion for Summary Judgment. But *Thomas* relates to Plaintiff's *Monell* claim against Defendant Cook County, an issue the court never fully addressed because it found that Plaintiff had not made a showing of deliberate indifference. Because *Dobbey* changes the court's decision as to whether Defendants were deliberately indifferent, the court must now also fully address Plaintiff's *Monell* claim, as well, and may properly consider *Thomas* in that context.

### B. Deliberate Indifference

To demonstrate an Eighth Amendment violation, Plaintiff must present objective evidence of a serious medical condition and subjective evidence of a defendant's deliberately indifferent mental state. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). In its initial order on summary judgment, the court held that Plaintiff met the objective test, in that there was a genuine dispute as to whether his tooth injury was a serious medical condition, but that he failed to show deliberate indifference because Plaintiff received adequate medical care.

#### 1. Liability of Defendant Taylor

Plaintiff argues that the court committed a manifest error of law when it held that the delay in treating Plaintiff's dental pain did not render his care inadequate. (Doc. 123 at 2.) Plaintiff notes that in *Dobbey v. Mitchell-Lawshea*, the Seventh Circuit reversed the district court's grant of summary judgment, and found an unexplained delay in treating an inmate's serious dental pain constituted deliberate indifference; the Court of Appeals observed that the district court failed to "attach sufficient weight to the slack response of the prison staff." 806 F.3d at 940. In *Dobbey*, the inmate complained to a medical technician that he had a loose tooth that was causing him severe pain and required immediate medical attention. *Id.* at 939. The technician filled out an emergency request, wrote the word "abscess" on a form, and referred the inmate to the infirmary for treatment. *Id.* After receiving the complaint, the defendant-dentist scheduled the inmate to be examined two days later. *Id.* But it was not until 16 days after the initial complaint, and a series of unexplained cancelled appointments, that the dentist finally examined the inmate and extracted the molar. *Id.* The Court of Appeals held that the district court erred in concluding, on summary judgment, that plaintiff had received adequate care, in light of evidence that the inmate "did not receive prompt treatment; he received a series of runarounds, experienced weeks of pain, and lost the tooth." *Id.* at 940. Reversing summary judgment, the court noted that defendants had offered no explanation for the two-week delay: "A dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus

9

prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable." *Id.*

In the case before this court, Plaintiff complained about his tooth on four separate occasions in August 2013 before he was treated by a dentist. Based on Plaintiff's HSR forms, the court determined in its previous order that the prison likely would not have been on notice as to the severity of the injury until August 23, 2013, when Plaintiff was seen by the dispensary doctor for an unrelated injury. (Jan. 14, 2016 Order at 18.) Specifically, the court found that Defendant Taylor became aware of Plaintiff's "excruciating pain," at the earliest, by August 27, 2013 when the dental assistant who reviewed Plaintiff's HSR form requested a dental appointment for him. (*Id.* at 15-16.) Plaintiff was seen eight days later. Defendant Taylor testified that she does not know anything about how patients are scheduled for dental treatment in her clinic. (Pl.'s Add'l Facts ¶ 29.) There is no explanation in the record for the delay in dental treatment after the August 23, 2013 visit, however; no explanation for the delay leading up to the review of the August 27, 2013 grievance; and no explanation for the subsequent delay before Plaintiff was finally examined. There is also no explanation for Defendant Taylor's apparent lack of familiarity with the HSR form process, despite evidence that the dentist is expected to evaluate and prioritize injuries based on these forms.

The court is persuaded that *Dobbey* calls for closer scrutiny of such delays. In its previous order, the court recognized that Plaintiff could have been treated earlier, and that earlier treatment may have made a difference. (Jan. 14, 2016 Order at 17.) If a jury credits Plaintiff's evidence, then in accordance with *Dobbey*, "all of the requirements of deliberate indifference will have been satisfied by that delay." 806 F.3d at 940. With respect to Cook County, other prison officials would have known of Plaintiff's complaint on August 11, 2013 if they conducted face-to-face evaluations based on HSR forms, and certainly no later than August 23, 2013 when Plaintiff was seen by the medical dispensary for an unrelated injury. But there was no follow-up relating to the dental injury—even after Plaintiff was seen on August 23,

2013—until Plaintiff submitted the August 27, 2013 grievance. With respect to Defendant Taylor, by August 27, 2013 she would have known that Plaintiff "had a serious medical problem that was within her professional knowledge and experience to solve." *Id.* at 940-941. She would have known that the "problem would get worse the longer treatment was delayed and that [Plaintiff] would suffer acutely" until receiving treatment. *Id.*

In response to Plaintiff's 59(e) motion, Defendants reiterate the argument the court rejected on summary judgment, that Plaintiff fails the objective prong of deliberate indifference as he did not have a serious medical condition. For this argument, Defendants rely on a case they previously cited to in their summary judgment brief, *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). But, as the court explained earlier, that Second Circuit case actually supports Plaintiff's position that there is a genuine dispute whether Plaintiff's tooth injury was sufficiently serious to give rise to an Eighth Amendment violation. (Jan. 14, 2016 Order at 14.) In *Harrison*, as here, the damage to the inmate's tooth was so serious that the tooth required extraction. This was a serious medical condition, the Second Circuit concluded, distinguishing the circumstances from a mere cavity. *Id.*

Defendants also argue that Plaintiff's claim still fails the subjective prong, and that, regardless of *Dobbey*, Defendants were not deliberately indifferent to the serious medical need. (Defs.' Resp. to Pl.'s Mot. to Reconsider at 6) ("Plaintiff's claim must fail because medical care was not withheld, delayed, nor did Plaintiff receive substantial harm from the alleged denial of medical care.").) Defendant argues that Plaintiff, unlike the inmate in *Dobbey*, did not receive a series of "runarounds" and "within one month received three prescriptions for pain medication, antibiotics, as well, as an extraction of the tooth at issue." (*Id.* at 7.) True, there were no unexplained cancellations on record in this case; but there was a delay in treatment without explanation, and an ultimate extraction of the tooth. The court is persuaded that in light of the intervening *Dobbey* decision, there is a genuine dispute as to whether medical care was delayed, and/or whether Plaintiff suffered substantial harm from the denial of medical care.

11

Another Seventh Circuit case decided still more recently further bolsters this conclusion. In *Petties v. Carter*, the plaintiff-inmate suffered a rupture to his Achilles tendon. *Petties v. Carter*, No. 14-2674, ___ F.3d ___, 2016 WL 4631679 (7th Cir. Aug. 25, 2016). The district court granted summary judgment for the prison officials, and the Court of Appeals heard the case *en banc* "to clarify when a doctor's rationale for his treatment decisions supports a triable issue as to whether that doctor acted with deliberate indifference under the Eighth Amendment." *Id.* *1. The court noted the difficulty of proving deliberate indifference on the part of prison officials: "[E]xcept in the most egregious cases, plaintiffs generally lack direct evidence of actual knowledge. Rarely if ever will an official declare, 'I knew this would probably harm you, and I did it anyway!'" *Id.* at *3. Circumstantial evidence that could support an inference of deliberate indifference includes "an inexplicable delay in treatment which serves no penological interest." *Id.* at *5, citing *Grieveson v. Anderson*, 539 F.3d 763, 779 (7th Cir. 2008). A plaintiff must also show that such a delay had a detrimental effect on his condition. In *Petties*, the plaintiff demonstrated an inexplicable delay in prompt immobilization of his foot, which resulted in pain and gapping at the rupture site of the tendon. *Id.* at *6.

In the case before this court, Defendant Taylor was unable to provide any penological rationale for her treatment plan. Instead, nearly every question asked of Dr. Taylor regarding the proper protocol for treating dental pain drew the same response: When asked under what circumstances a chipped tooth could cause pain, she responded, "I can't specify that." (Taylor Dep. at 86.) When asked whether a chipped tooth could make it difficult to eat, Taylor responded, "I don't know." (*Id.* at 89-90.) When asked whether it would be appropriate to refer a person complaining of a chipped tooth to a dental clinic within one week, Dr. Taylor again responded that she didn't know. (*Id.* at 106-07.) The court is also satisfied that there is a triable issue as to whether the delay had a detrimental effect on Plaintiff's injury. Dr. Taylor confirmed that Plaintiff suffered from an infection, and that the tooth needed to be removed based on her physical examination. (*Id.* at 129-30.) The evidence creates a triable issue on whether the

delay in treatment of Plaintiff's tooth had a detrimental effect.

### 2. Entity Liability

Plaintiff also argues the court committed a manifest error of law when it held that Plaintiff's entity liability claim must fail because Plaintiff failed to show that anyone at the prison was deliberately indifferent to his dental pain. Plaintiff relies on *Thomas v. Cook County*, in which the Seventh Circuit declined to hold that a plaintiff must show individual liability before an entity can be liable for damages. (Pl.'s Mot. to Reconsider at 2 (citing 604 F.3d 293).) Defendants argue that the holding in *Thomas* is inapplicable because Plaintiff has not offered evidence of a series of violations or otherwise established a basis for imposing liability on the County. (Defs.' Resp. to Pl.'s Mot. to Reconsider at 3.) The court did not reach the issue in its earlier ruling, but turns to it now

Under *Monell*, a municipality will be liable for a constitutional violation only if the plaintiff can demonstrate that the defendants' "official policy, widespread custom, or action by an official with policy-making authority was the 'moving force' behind the constitutional injury." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016). There are no "bright-line rules defining a 'widespread custom or practice.'" *Thomas*, 604 F.3d at 303 (internal citations omitted). And, an unconstitutional policy can include an implicit policy or a gap in expressed policies. *Id.* While the plaintiff must go beyond showing the deficiencies specific to his own experience, "[h]e need not present evidence that these systemic failings affected other specific inmates." *Daniel v. Cook Cty.*, No. 15-2832, __ F.3d __, 2016 WL 4254934, at *10 (7th Cir. Aug. 12, 2016).

Plaintiff's claim rests on the premise that a widespread practice of failing to review medical requests resulted in his dental injury. To meet his burden, Plaintiff must show that the practice is "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Dixon*, 819 F.3d at 348 (quoting *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006)). "The challenge in litigation like this is to distinguish between systemic problems showing official deliberate indifference and occasional lapses that are inevitable in

well-run institutions." *Daniel*, 2016 WL 4254934, at *9-10.

In *Thomas v. Cook County*, the plaintiff presented evidence of the County's widespread practice of failing to review medical requests, and of staff's failure to collect medical requests every day. 604 F.3d at 303. Plaintiff here argues that similar evidence of a policy of deliberate indifference toward serious dental pain at the jail supports his claim. (Pl.'s Am. Compl. ¶ 8.) The written policy calls for a face-to-face evaluation by a nurse or other qualified health care professional in response to every HSR form complaining of dental pain, but Plaintiff has offered evidence that this is not the actual practice at CCJ. (Pl.'s Add'l Facts ¶¶ 11-13; Deposition of Chidima Onyeachonam at 28:3-9, Ex. 6 to Pl.'s Add'l Facts; Testimony of Jesus Estrada at 1271-72, Ex. 5 to Pl.'s Add'l Facts.) Plaintiff never had such an evaluation, and also relies on the testimony of a nurse currently employed by Cermak Health Services, who did not know whether face-to-face evaluations occurred when processing forms for dental pain. (Onyeachonam Dep. at 28:12-16.) Next, contrary to Defendants' assertion that HSR forms are picked up daily, Plaintiff notes that his own medical records show an eight-day delay between when his first HSR form was reviewed by medical personnel and when it was reviewed by dental staff on August 19, 2013. (Pl.'s Resp. to Defs.' Am. SUF ¶ 34 [109]; Pl.'s Add'l Facts ¶ 21 (citing Townsend Dep. at 30; Pl.'s Electronic Medical Records, Ex. 8 to Pl.'s Add'l Facts).) Dr. Townsend, the Director of Dental Services at CCJ, testified that the prison dentist determines the priority level for the inmate's dental problem based on the information contained in the inmate's HSR form. (Defs.' Am. SUF ¶ 35 (citing Townsend Dep. at 44).) He further testified that he believes all HSR forms should be reviewed by the dentist. (Pl.'s Add'l Facts ¶ 26 (citing Townsend Dep. at 40).). But the prison's dentist, Defendant Taylor, herself testified that she has never personally seen an HSR form. (Pl.'s Resp. to Defs.' Am. SUF ¶ 35; Pl.'s Add'l Facts ¶ 28.) Defendant Taylor also testified that she does not know anything about how patients are scheduled for dental treatment in her clinic. (Pl.'s Add'l Facts ¶ 29.)

As in *Thomas*, the evidence here goes beyond an isolated act of an individual employee.

14

Plaintiff presented evidence of gaps in the policies and practices that led to the delay in Plaintiff's case, and a jury could infer that the violation reflects a widespread issue. Taking the facts in the light most favorable to Plaintiff, there is a dispute as to the existence of a widespread practice of delayed responses to inmate dental complaints.

Defendants argue that to impute knowledge to policymakers of a widespread practice, Plaintiff must show a pattern of constitutional violations, and that Plaintiff has not identified any failed policy or practice related to his injury. (Defs.' Mem. [99] at 12-13.) Cases cited by Defendants on this issue are distinguishable, however. In *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003), for example, the inmate asserted that Marion County Jail had a widespread practice of allowing inmates to fight and of segregating inmates by race, and that therefore the municipality was deliberately indifferent to the inmate's health and well-being. To support his claim, the inmate relied on an affidavit based on his personal knowledge of two incidents of inmate-on-inmate violence in which correctional officers failed to intervene. *Id.* at 596. The court held that such a self-serving affidavit, alone, is insufficient to defeat summary judgment. *Id.* In *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 1995), an inmate's affidavit described four instances in which jail guards gave him his entire prescription at once, and the medication was stolen from him by other inmates. The plaintiff contended that the practice of giving multiple prescription doses to inmates at one time endangered them, but the court stated that plaintiff could not demonstrate an official policy or custom based only on an affidavit concerning his own experience. *Id.* at 773-774. Defendants also cite to *Jackson v. Marion Cty.*, 66 F.3d 151 (7th Cir. 1995), but there the court determined plaintiff did *not* need to show a series of acts of misconduct to demonstrate an unconstitutional policy when plaintiff's theory was that the municipality engaged in a "cover up." *Id.* at 152. These cases do not defeat *Monell* liability in the circumstances before this court.

The record in this case is more robust than the self-serving affidavits in *Palmer* and *Grieveson*; instead, this case more closely resembles the facts in *Daniel v. Cook County*.

There, the Seventh Circuit reversed the district court's grant of summary judgment to defendants, holding that the evidence raised a genuine issue of material fact as to whether his injury resulted from systemic, gross deficiencies in the Jail's medical care. The plaintiff in *Daniel*, a pretrial detainee at CCJ, fell and suffered multiple fractures to his wrist while playing basketball. The plaintiff asserted, and an orthopedic specialist agreed, that the treatment of his wrist was disrupted by avoidable delays in treatment that caused permanent damage to Daniel's hand and wrist. 2016 WL 4254934 at *3. In examining plaintiff's claim of *Monell* liability against Cook County, the Seventh Circuit pointed out that the record "reflect[ed] a common scenario: an institution 'structured its affairs so that no one person was responsible for [the inmate's] care, and such diffused responsibility can make it very difficult to show individual responsibility for health care failures." *Id.* at 8. The inmate provided substantial evidence of systemic deficiencies in the Jail's medical care, "including extensive testimony from the Jail medical staff," that demonstrated the difficulty in getting inmates scheduled for needed healthcare, and maintaining correct and accessible records of their medical treatment. *Id.* 10-11.

As in this case, the defendants in *Daniels* objected to the admissibility of the Monitor's Report. Though the Seventh Circuit did not admit the report as substantive evidence, the court held that, at a minimum, the report is admissible to show that Defendants were on notice of the alleged staffing shortages. This court will consider the Monitor's Report for the same purpose, along with other evidence similar to what appeared in the *Daniel* case, including conflicting deposition testimony of multiple Cermak employees and policy makers regarding the prison's practices. And, as previously discussed, the prison's only dentist, Defendant Taylor, had no knowledge of the requirement that she review HSR forms from complaining inmates. The gaps in the prison's practices for treating inmate dental injuries raise a sufficient question for the jury as to Cook County's liability.

Finally, the court considers Defendants' contention that the holding of *Smentek v. Sheriff of Cook Cty.*, No. 09 C 529, 2014 WL 7330792, at *1 (N.D. Ill., Dec. 22, 2014), defeats Plaintiff's

16

claim of deficient dental care. (Defs.' Mem. [99] at 13.) In *Smentek*, the plaintiffs brought suit against Cook County and its sheriff charging that inmates at CCJ were deprived of adequate dental care in violation of the Eighth and Fourteenth Amendments. The court initially certified two classes under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). Later, however, after further briefing, the court decertified the (b)(2) class, ordered modification of the (b)(3) class definition, and denied plaintiffs' motion for a preliminary injunction. As this court reads *Smentek*, the case ultimately supports Plaintiff's claim for deliberate indifference. Defendants point out that after the trial on injunctive relief, Judge Lefkow found that "[d]efendants have significantly increased dental staffing at the jail to within optimal range," and that "policies generally fall within the nationally recognized standard of care and are similar to policies used in other correctional settings." *Id.* at *8. Thus, the court held, the common question of causation for the proposed class, whether the alleged inadequacy of dental staff deprived class members of timely relief of dental pain, was no longer present. But as to the individual claims, the court held, "treatment of dental pain may fall below the deliberate indifference threshold for many reasons and at many stages in the treatment process." *Id.* For example, the court pointed out that in some instances, an officer did not call medical staff; in others, nurses did not timely review their HSR forms and conduct face-to-face-examinations; and in still other instances, inmates did not receive necessary medication. The court went on, "[f]ailure to remediate dental pain at any of these points may constitute deliberate indifference depending on the facts of the individual case . . . ." Thus, while the court was unable to conclude that "all detainees are effectively denied treatment of dental pain[,]" *id.* at 9, the court left open the door to individualized claims. Significantly, Judge Lefkow noted that the "procedures for addressing dental grievances were modified" at the end of 2013, presumably after Plaintiff Thompson's complaints. *Id.* at *3. *Smentek* does not defeat his claim for damages.

**CONCLUSION**

On reconsideration, the court concludes that Plaintiff has established that there is a genuine dispute of material fact as to whether Defendants acted with deliberate indifference towards his dental condition, in violation of the Eighth and Fourteenth Amendments. Plaintiff's motion for reconsideration [123] is granted. The summary judgment in favor of Defendants is vacated, and this case is reinstated. A status conference is set for Thursday, October 6, 2016 at 9:00 a.m.

ENTER:

Dated: September 20, 2016  _____
REBECCA R. PALLMEYER
United States District Judge